```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
J.A.¹, an infant by his Mother and                       :
Natural Guardian, TAMMY ATKINS and
TAMMY ATKINS, Individually,                              :

                            Plaintiffs,                  :    REPORT and RECOMMENDATION

            -against-                                    :    08 Civ. 3640 (DAB)(KNF)

JA-RU, INC., DOLGENCORP, INC.,                           :
DOLGENCORP OF NEW YORK, INC. and
DOLLAR GENERAL CORPORATION,                              :

                            Defendants.                  :
------------------------------------------------------------------X
```

**KEVIN NATHANIEL FOX**
**UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE DEBORAH A. BATTS, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

On January 17, 2008, J.A., an infant, and his mother, Tammy Atkins ("Atkins"), commenced the instant action in the New York State Supreme Court, Orange County, for damages arising from an explosion of toy gun caps, which burned J.A.'s left hand. On April 16, 2008, one of the defendants, Ja-Ru, Inc., removed the action to this court.

The parties have negotiated a settlement, in which all J.A.'s claims against the defendants would be compromised. Before the Court is Atkins' motion for leave to settle this action.

## BACKGROUND

**Facts**

On or about July 1, 2006, Atkins purchased the wrong sized caps for J.A.'s toy cap gun from

---

¹ In order to preserve the minor plaintiff's privacy, the Court will identify the minor using only his initials. See Fed. R. Civ. P. 5.2(a)(3). Arguably, the minor has waived the protection of Fed. R. Civ. P. 5.2(a) by filing documents with the court, electronically and in paper form, which reveal his full name. See Fed. R. Civ. P. 5.2(h). To the extent these filings have been made by mistake, the plaintiffs may seek relief from the court.

The Dollar Store in Marlboro, New York.  Atkins purchased the caps in rings of eight, but J.A.'s gun held only single caps.  Atkins instructed J.A. to cut the caps apart so they could be loaded into his gun.  J.A., who was nine years old at the time, cut the caps apart and put them into a plastic container, where they "suddenly exploded" and burned J.A.'s left hand.

Medical records, submitted in support of the proposed settlement, show that, on July 1, 2006, J.A. was admitted to St. Luke's Cornwall Hospital ("St. Luke's"), where he received morphine intravenously for pain and soaked his left hand in sterile water.  A physician, Dr. Thomas, attended to J.A. at St. Luke's and transferred him to Westchester Medical Center ("WMC") that day.  Dr. Paul Kotzampaltiris examined J.A. upon his arrival at WMC and admitted him for further evaluation and treatment.  On July 5, 2006, Dr. Charles A. Salzberg ("Dr. Salzberg") performed debridement surgery on J.A. to remove damaged tissue from his burnt hand.  During the surgery, Dr. Salzberg decided not to pursue skin grafting.  J.A. tolerated the surgery well and was discharged that day to home care.

In her supplemental affidavit, submitted in support of the proposed settlement, Atkins advises that J.A.'s left hand has healed well.  J.A. does not have scarring or suffer any functional restrictions; however, his left hand causes him "some pain" in the winter and "'prunes'" more quickly than his right hand when he swims.  J.A.'s left hand is slightly discolored.  The discoloration is noticeable during the summer, because the injured part of his left hand does not tan like the rest of his body.  Atkins reports that J.A. feels shy about the difference in appearance between his two hands, becomes upset when he sees cap guns and "occasionally dreams about the day of his injury."

**Proposed Settlement**

The parties have negotiated a settlement after what the plaintiffs' counsel, James Alexander Burke ("Burke"), describes, in his affidavit, as "[e]xtensive" negotiations.  The key terms of the proposed settlement are as follows: (1) J.A.'s claims against the defendants are compromised for the

sum of $5,000[2]; (2) from the $5,000, the plaintiffs' counsel, the law firm of Larkin, Axelrod, Ingrassia & Tetenbaum, LLP ("LAIT") will receive $1,097.47 for disbursements only; (3) the equitable subrogation claim asserted by Empire Blue Cross/Blue Shield/Child Health Plus ("Empire") is extinguished[3]; and (4) the balance of the settlement funds – $3,902.53 – is to be paid directly to Atkins "jointly with an officer of the Wachovia Bank, 43 North Plank Road, Newburgh, New York" to be deposited in one or more high interest-bearing time savings certificate accounts until J.A. attains eighteen years of age.

In her affidavit, submitted in support of the proposed settlement, Atkins states that she believes the proposed settlement is fair, reasonable and in J.A.'s best interest to accept. This is so because Atkins believes: (1) the liability of the defendants in this action is "questionable"; and (2) J.A. has made "a reasonably good recovery from his injury[.]" In his affidavit, Burke states that he also believes the proposed settlement is fair and reasonable for the same reasons cited by Atkins.

On February 23, 2011, the Court held a hearing to determine the reasonableness and propriety of the proposed settlement. The Court permitted Atkins and J.A. to appear at the hearing telephonically, owing to the financial burden they faced to attend in-person. At the hearing, Atkins informed the Court that she did not have the names of all physicians who treated J.A. at St. Luke's and WMC. Atkins stated that J.A. did not have full use of his left hand for "a few months" after his burn, but was not employed at the time he sustained his injury. Additionally, Atkins explained that she did not consider any vehicles for investing J.A.'s settlement monies other than the time savings certificate accounts in the proposed settlement. During the hearing, the Court asked J.A. how the

---

[2] In her affidavit, Atkins waives her claim against the defendants.

[3] Empire, the health insurance provider for J.A.'s family, paid J.A.'s medical expenses in connection with his burn. In a letter, dated August 28, 2006, Empire advised the plaintiffs' counsel of its "intention . . . to exercise its right of equitable subrogation" and seek $16,853.09 in benefits it paid on behalf of J.A.

burn had affected him.  J.A. replied that the burn "hurt a lot" and that "it makes [him] uncomfortable being asked about it because it makes [him] remember the horrible day [he] had."  The Court advised J.A. about the terms of the settlement and he indicated that he understood and found those terms acceptable.

## DISCUSSION

In this judicial district, an action by or on behalf of an infant may not be settled without leave of the court.  Local Civil Rule 83.2(a)(1).  A court's review of an application to settle an infant's claim should conform, as closely as possible, with applicable New York State statutes and rules, though a court may dispense with any New York State requirement "for cause shown."  Id.; see New York Judiciary Law ("NYJL") § 474; New York Civil Practice Law and Rules ("CPLR") §§ 1205-1208.  A court's role in reviewing a proposed infant compromise is to ensure the settlement is "fair and reasonable and in the infant plaintiff's best interests."  Edionwe v. Hussain, 7 A.D.3d 751, 753, 777 N.Y.S.2d 520, 522 (App. Div. 2d Dep't 2004); see Doe v. Mattingly, No. 06 CV 5761, 2007 WL 2362888, at *2 (E.D.N.Y. Aug. 14, 2007) (quoting Neilson v. Colgate-Palmolive Co., 199 F.3d 642, 654 [2d Cir. 1999]) (a court must determine whether a proposed settlement is "'fair, reasonable and adequate,' by comparing 'the terms of the compromise with the likely rewards of litigation'").  In doing so, a court must "'form an educated estimate of the complexity, expense, and likely duration of such litigation . . . and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'"  Newman v. Stein, 464 F.2d 689, 692 (2d Cir. 1972) (citation omitted), cert. denied, 409 U.S. 1039, 93 S. Ct. 521 (1972); see also Allen v. Robert's American Gourmet Food, Inc., No. 07-CV-2661, 2009 WL 2951980, at *10 (E.D.N.Y. Sept. 8, 2009) (listing various factors a court should consider in assessing a proposal to compromise an infant's claim).

CPLR § 1208 requires that a proposed settlement of an infant's claim be accompanied by affidavits from the infant's representative and attorney, providing specific information.  The Court

finds that the affidavits submitted in this action, supplemented by information provided during the infant compromise hearing, comport with the requirements of CPLR § 1208 and that all the procedures set forth in CPLR § 1208 have been satisfied.[4]

Based on the record before it, the Court finds the proposed settlement to be fair, reasonable and in the best interest of J.A.  As J.A.'s mother and attorney both acknowledge, proving the defendants' liability in this action will be difficult.  Even if the plaintiffs were to establish liability, J.A. is unlikely to recover substantial damages given the limited nature of his injury, from which he has recovered well, with no scarring or loss of function.  Compromising J.A.'s claims will avoid costly litigation, which will require expert discovery, and spare J.A. the discomfort of recalling and discussing his injury.  The proposed investment of J.A.'s money from the settlement is in line with what New York law suggests may be reasonable.  See CPLR § 1206© (authorizing a court to order an infant's settlement funds be deposited in a high interest yield account such as an insured savings certificate account subject to withdrawal by an infant who has attained eighteen years of age).  The Court also gives significant deference to Atkins' belief that the proposed settlement is in the best interest of her son.  See Stahl v. Rhee, 220 A.D.2d 39, 46, 643 N.Y.S.2d 148, 153 (App. Div. 2d Dep't 1996) (noting that, "[i]n a case where reasonable minds may legitimately differ, the judgment of the infant's natural guardian should prevail").

**Disbursements to Counsel**

In evaluating a proposed settlement of an infant's claim, a court must fix the fees and

---

[4] At the infant compromise hearing, Atkins informed the Court that she did not have the names of all physicians who treated J.A., as required by CPLR § 1208(a)(4).  The Court left the hearing record open for two weeks to permit the plaintiffs to provide, to the extent possible, the names of all physicians who treated J.A.  The plaintiffs have not provided any names to the Court, other than those presented in the medical records.  The Court has determined, in its discretion, to dispense with the requirement that Atkins provide the name of each physician who treated J.A. or who was consulted.  See Local Civil Rule 83.2(a)(1).

disbursements, if any, to be paid to the infant's counsel.  See Local Civil Rule 83.2(a)(2); NYJL § 474.

Atkins retained LAIT on July 3, 2006.  In his affidavit, Burke states that, owing to the "modest nature of the recovery" in this action, LAIT has waived its attorneys' fees.  However, LAIT seeks $1,097.47 from the proceeds of the settlement to recover disbursements made by the firm in representing the plaintiffs.  The plaintiffs' counsel has submitted an itemized disbursement list, which shows costs incurred by LAIT for filing the complaint, serving process, and obtaining medical and hospital records.  The Court has reviewed the disbursements and finds they are proper and reasonable.

**Equitable Subrogation Claim**

The proposed settlement extinguishes any equitable subrogation claim asserted by Empire.  According to the plaintiffs, New York General Obligations Law ("GOL") § 5-335 prohibits Empire from asserting a subrogation claim against any party to the settlement or receiving any proceeds therefrom.

"It is well established that when an insurer pays for losses sustained by its insured that were occasioned by a wrongdoer, the insurer is entitled to seek recovery of the monies it expended under the doctrine of equitable subrogation."  Fasso v. Doerr, 12 N.Y.3d 80, 86, 875 N.Y.S.2d 846, 849 (2009).  "Therefore, if an injured party receives monies from the tortfeasor attributable to expenses that were paid by its insurer, the insurer may recoup its disbursements from its insured; but when the wrongdoer does not pay damages for an insured's medical expenses, generally the insurer, as subrogee, has been allowed to seek recovery directly from the tortfeasor."  Id., 12 N.Y.3d at 87, 875 N.Y.S.2d at 849.  In Fasso, the New York Court of Appeals held that an injured party and tortfeasor cannot agree to a settlement that extinguishes an insurer's subrogation rights without the insurer's consent.  Id., 12 N.Y.3d at 88, 875 N.Y.S.2d at 850.

In response to Fasso, the New York Legislature enacted GOL § 5-335, see Rizzo v. Moseley, 913 N.Y.S.2d 905, 909 (N.Y. Sup. Ct. 2010), which provides, in pertinent part, that except where there exists a statutory right to reimbursement: (1) "[w]hen a plaintiff settles with one or more defendants in an action for personal injuries . . . it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been . . . paid or reimbursed by a benefit provider"; and (2) "no party entering into such a settlement shall be subject to a subrogation claim . . . by a benefit provider[.]"  GOL § 5-335; see GOL§ 5-101(4) (defining "benefit provider").  GOL § 5-335 took effect on November 12, 2009, but applies to actions commenced prior to that date where, as of that date, either trial has not yet commenced or the parties have not yet entered into a stipulation of settlement.  See 2009 N.Y. Sess. Laws ch. 494, pt. F, § 9.  Inasmuch as GOL § 5-335 applies only if parties settle, defendants in tort actions "have an added incentive or pressure to settle, thereby unilaterally cutting off an insurer's subrogation claims against them prior to their attaching by verdict."  Rizzo, 913 N.Y.S.2d at 909; see Rink v. State, 27 Misc. 3d 1159, 1164, 901 N.Y.S.2d 480, 484 (N.Y. Ct. Cl. 2010) ("Where the case is settled, the insurer's right to seek subrogation is extinguished.").

In the instant action, it is not clear that Empire has asserted a claim for equitable subrogation.  To enforce a right of equitable subrogation, an insurer typically brings an independent action against the tortfeasor or seeks to intervene in an existing action between the insured and the tortfeasor.  See Rink, 27 Misc.3d at 1163, 901 N.Y.S.2d at 483.  No evidence of an independent action by Empire has been presented to the Court nor has Empire attempted to intervene in this action.  The only basis for the belief that an equitable subrogation claim has been asserted is Empire's August 28, 2006 letter, informing the plaintiffs' counsel of its "intention" to pursue its subrogation rights.

Nevertheless, to the extent Empire is asserting an equitable subrogation claim, the proposed

settlement, once consummated, would extinguish that claim, pursuant to GOL § 5-335, unless Empire had a statutory right to reimbursement. No evidence is before the Court establishing that Empire has a statutory right to reimbursement. Therefore, by the express language of GOL § 5-335, Empire would not only be unable to assert a subrogation claim against any party to the settlement, but it would also be prevented from contending that the settlement funds received by J.A. include amounts for medical expenses paid by it. In light of these circumstances, Empire's claim of equitable subrogation, as a matter of law, is extinguished.

## RECOMMENDATION

For the reasons set forth above, I recommend that your Honor grant Atkins' motion for leave to settle this action, Docket Entry No. 16, and sign the infant compromise order appended thereto as Exhibit D.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, New York, New York 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Batts. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 145, 106 S. Ct. 466, 470 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v.

Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York  
       March 15, 2011

Respectfully submitted,

_____  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE